**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KESHIA CURRY, individually and on behalf of all others similarly situated, <br>     Plaintiff, <br> vs. <br> MY DAILY CHOICE, INC.; and DOES 1 through 20, inclusive, and each of them, <br>     Defendants. | Case No. 1:23-cv-04061 <br><br> **CLASS ACTION COMPLAINT** <br> **FOR VIOLATIONS OF:** <br> (1)   Negligent Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* <br> (2)   Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* <br><br> **JURY TRIAL DEMANDED** |

Now comes the Plaintiff, KESHIA CURRY ("Plaintiff"), individually and on behalf of all others similarly situated, and for her Class Action Complaint against the Defendants, MY DAILY CHOICE, INC. and DOES 1 through 20, inclusive (collectively, "Defendants"), Plaintiff hereby states as follows:

**NATURE OF THE CASE**

1.     Plaintiff brings this action for herself and others similarly situated seeking damages and any other available legal or equitable remedies resulting from the illegal actions of Defendants My Daily Choice, Inc. ("MDC") and DOES 1 through 20, in negligently and willfully contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"), thereby invading Plaintiff's privacy.

1

2.      The TCPA was designed to prevent calls and messages like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3.      In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102– 243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; see also *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

4.      Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." *Id.* at §§ 12-13. See also, *Mims*, 132 S. Ct. at 744.

5.      In a recent decision, the Supreme Court interpreted the term "automatic telephone dialing system" and held that "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator *or* to produce a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021) (emphasis added).

2

6.      In *Duguid*, the Supreme Court provided an example of such systems, stating: "For instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." *Id.* at 1171-72 fn. 7.

7.      Further, both *Duguid* and the legislative history of the TCPA are clear that the original focus on prerecorded voice technology prohibition was the fact that such communications involved agentless calls, not on the question of whether a literal voice was used during those agentless calls. *See* Hearing Before the Subcommittee on Communications of the Committee on Commerce, Science and Transportation, United States Senate One Hundred Second Congress First Session July 24, 1992, Testimony of Robert Bulmash and Steve Hamm at pg. 11; 7 FCC Rcd. 8752 (F.C.C. September 17, 1992).

8.      The Sixth Circuit has also recognized this distinction: "Congress drew an explicit distinction between 'automated telephone calls that deliver an artificial or prerecorded voice message' on the one hand and 'calls place by 'live' persons' on the other." *Ashland Hosp. Corp. v. Serv. Employees Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737,743 (6th Cir. 2013).

9.      Similarly, the FTC has observed that "prerecorded calls are by their very nature one-sided conversations, and if there is no opportunity for consumers to ask questions, offers may not be sufficiently clear for consumers to make informed choices before pressing a button or saying yes to make a purchase." 73 FR 51164-01, 51167 (Aug. 29, 2008).

## JURISDICTION & VENUE

10.     Jurisdiction is proper under 28 U.S.C. § 1331 because Plaintiff's claims arise out of a federal law, the TCPA.

11.     Venue is proper in the United States District Court for the Northern District of

Illinois pursuant to 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events giving rise to the claims in this case occurred.

## PARTIES

12.     Plaintiff, Keshia Curry ("Plaintiff"), is a natural person residing in Cook County, Illinois.

13.     Defendant My Daily Choice, Inc. ("MDC") is a Nevada corporation which maintains its principal place of business in Las Vegas, Nevada. Plaintiff is informed and believes that Defendant conducts and conducted business in Illinois and nationwide.

14.     The above named Defendant, and its subsidiaries and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 20, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

15.     Plaintiff is informed and believes and thereon alleges that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was the owner, agent, servant, joint venturer, and employee, each of the other and each was acting within the course and scope of its ownership, agency, service, joint venture and employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes and thereon alleges that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

16.     At all times mentioned herein, each and every Defendant was the successor of the

other and each assumes the responsibility for each other's acts and omissions.

## FACTUAL ALLEGATIONS

17.     On September 21, 2021, Plaintiff received a text message from Defendants on her cellular telephone number ending in -2817.

18.     Defendant's text message sought to solicit Plaintiff to purchase Defendant MDC's products and services.

19.     Defendants did not have Plaintiff's prior express consent to contact her on her cellular phone.

20.     Despite not having Plaintiff's consent to contact her and receiving no response to their initial text message, Defendants messaged Plaintiff again on September 23, 2021, October 7, 2021, and May 9, 2022.

21.     Based on the content and format of Defendants' text messages, Plaintiff alleges that they were sent via Defendants' SMS Blasting Platform, i.e., an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1) and as prohibited by 47 U.S.C. § 227(b)(1)(A).

22.     Upon information and belief, Defendants constructed the content of the marketing text messages, including the exact language of each message, as well as the timing of the sending of the message campaign.

23.     The text messages sent to Plaintiff were impersonal and based on a template.

24.     Upon information and belief, the automated text messaging system used by Defendants to send the text messages has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

25.     Upon information and belief, the automated text messaging system used by

Defendants to send the text messages also has the capacity to, and does, dial telephone numbers stored as a list or in a database without human intervention.

26.     Moreover, the messages sent to Plaintiff were drafted in advance and sent out automatically based on pre-programmed parameters.

27.     The text messages sent to Plaintiff's cellular telephone were not sent by a live agent and thus created a one-sided conversation in which Plaintiff could not receive a response to her questions and/or concerns. The text messages also were sent in an automated fashion as a result of computerized campaigns that were pre-programmed in advance to send messages out to large groups of consumers all at once, either sequentially or via algorithmic dialing, i.e. in an automated fashion by a computer.

28.     In Merriam-Webster's Dictionary, "voice" is defined as "an instrument or medium of expression."  Merriam-Webster's Dictionary defines "artificial" as "humanly contrived…often on a natural model : MAN-MADE" and "lacking in natural or spontaneous quality."

29.     The messages sent to Plaintiff by Defendants employed a text message as an instrument or medium of expression to deliver an automatic message drafted in advance of being sent, i.e. that of an SMS message, to convey a telemarketing communication to Plaintiff.  SMS blasting platforms are man-made, humanly-contrived programs which allow companies to blast out such messages via non-spontaneous methods, i.e. automated methods similar to that of an assembly line in a factory.  Such SMS blasting devices are incapable of spontaneity, as they must be programmed by the operator to automatically send messages out, *en masse*, pursuant to preprogrammed parameters.

30.     Accordingly, Defendants' message utilized an "artificial voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

31.     In Merriam-Webster's Dictionary, "prerecorded" is defined as "recorded in advance." "Recorded" is defined as "to set down in writing." The text messages sent to Plaintiff's cellular telephone were set down in writing in advance by Defendants, whose employees and/or agents wrote out the standard automated messages that were to be sent to Plaintiff and other class members, and by way of preprogrammed SMS blasting, entered the prerecorded message into the SMS Blasting platform, and thereafter sent these messages pursuant to scheduled blasts that were programmed by Defendants. Thus, Defendants employed text messages as an instrument or medium of expression to deliver a prerecorded message drafted in advance of being sent.

32.     Thus, Defendants' message utilized a "prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

33.     Defendants' telephonic communications were not made for emergency purposes, as defined by 47 U.S.C. § 227(b)(1)(A)(iii).

34.     Defendants' telephonic communications were made to a telephone number assigned to a cellular telephone service for which Plaintiff incurred a charge, as prohibited by 47 U.S.C. § 227(b)(1).

35.     Defendants did not have prior express written consent to send the marketing text messages to Plaintiff's cell phone.

36.     Through Defendants' aforementioned conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

37.     Plaintiff is informed and believes and here upon alleges, that the text messages were sent by Defendants and/or Defendants' agent(s), with Defendants' permission, knowledge, and/or control and for Defendants' benefit.

38.     The text messages from Defendants, or their agent(s), violated 47 U.S.C. §

7

227(b)(1)(A)(iii).

39.    Plaintiff suffered a concrete and particularized injury in fact as a result of the SMS messages she received.  The messages invaded Plaintiff's privacy, causing annoyance, wasting her time, consuming use of her smartphone device without authorization, and otherwise invading her privacy and intruding into her personal affairs without permission.   The text messages also constitute a form of the precise harm that Congress was attempting to prohibit with the TCPA, which was designed to remedy invasions of privacy and nuisances caused to Americans by automated telemarketing messages sent without consent. Plaintiff actually suffered this precise injury by receiving the unwanted text messages, and having her privacy so invaded through a disturbance of her solitude, and unwanted intrusion of her technology and personal space. Accordingly, Plaintiff has Article III standing to seek redress for these violations in Federal Court.

## CLASS ALLEGATIONS

40.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure and/or other applicable law, on behalf of herself and all others similarly situated, as a member of the proposed class (hereafter "the Class") defined as follows:

> All persons within the United States who received any telephone calls and/or messages from Defendants to said person's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice and such person had not previously provided express consent to receiving such calls and/or messages within the four years prior to the filing of the original Complaint, through the date of class certification.

41.    Defendants, their employees, and agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the members of the Class number in the thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

42.     Plaintiff and members of the Class were harmed by the acts of Defendants in at least the following ways: Defendants, either directly or through its agent(s), illegally contacted Plaintiff and the members of the Class via their cellular telephones by using an ATDS, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the members of the Class previously paid, and invading the privacy of said Plaintiff and the members of the Class. Plaintiff and the members of the Class were damaged thereby.

43.     This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

44.     The joinder of the members of the Class is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court. The Class can be identified through records of Defendants and/or their agents and records of wireless telephone carriers

45.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual members of the Class, including the following:

>          (a)     Whether, within the four years prior to the filing of this Complaint, Defendants or their agent(s) sent any marketing text messages without the prior express written express consent of the called party to members of the

Class using an automatic dialing system;

(b)     Whether Defendants' conduct was knowing and/or willful;

(c)     Whether Plaintiff and the members of the Class were damaged thereby, and the extent of damages for such violation; and

(d)     Whether Defendants and their agent(s) should be enjoined from engaging in such conduct in the future.

46.     As a person who received at least one marketing text message from Defendants using an ATDS without Plaintiff's prior express written consent, Plaintiff is asserting claims that are typical of the Class.

47.     Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interest antagonistic to any member of the Class.

48.     Plaintiff and the members of the Class have all suffered irreparable harm as a result of Defendants' unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendants will likely continue such illegal conduct. Because of the size of each individual Class member's claims, few, if any, members of the Class could afford to seek legal redress for the wrongs complained of herein.

49.     Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

50.     A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants to comply with federal law. The interest of members of the Class in individually controlling the prosecution of separate claims against Defendants is small because the maximum statutory damages in an individual action for

violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

51.     Notice may be provided to the Class members by direct mail and/or email notice, publication notice and by other reasonable means.

52.     Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## COUNT I
## NEGLIGENT VIOLATIONS OF THE TCPA
## 47 U.S.C. § 227, *et seq.*

53.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

54.     The foregoing acts and omission of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq*.

55.     As a result of Defendants' violations of 47 U.S.C. § 227, *et seq*., Plaintiff and the Class Members are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

56.     Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## COUNT II
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA
## 47 U.S.C. § 227, *et seq.*

57.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

58.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq.*

59.     As a result of Defendants' violations of 47 U.S.C. § 227, *et seq*., Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

60.     Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

a.     An order certifying the Class as requested herein;

b.     An order appointing Plaintiff to serve as the Class Representative in this matter and appointing Plaintiff's Counsel as Class Counsel in this matter;

c.     An award of $500.00 in statutory damages to Plaintiff and each Class member for each and every negligent violation of 47 U.S.C. § 227(b)(1) by Defendants, pursuant to 47 U.S.C. § 227(b)(3)(B);

d.     An award of $1,500.00 in statutory damages to Plaintiff and each Class member for each and every knowing and/or willful violation of 47 U.S.C. § 227(b)(1) by Defendants, pursuant to 47 U.S.C. § 227(b)(3)(B);

e.     An order awarding injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A);

f.     An award of reasonable costs of suit and attorneys' fees; and

g.      Any other relief the Court may deem just and proper.


## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues in this action which are so triable.


RESPECTFULLY SUBMITTED,

KESHIA CURRY

By:     /s/ David B. Levin
        Attorney for Plaintiff
        Law Offices of Todd M. Friedman, P.C.
        707 Skokie Blvd., Suite 600
        Northbrook, Illinois 60062
        Phone: (224) 218-0882
        Fax: (866) 633-0228
        dlevin@toddflaw.com